## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DERIEL HEAD,

        Plaintiff,

v.                                     Case No.  3:18-cv-108-J-34MCR

OFFICER DALE CULLENS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss

("Motion") (Doc. 15) and Plaintiff's Response in opposition thereto ("Response")

(Docs. 17 & 18).  For the reasons stated herein, the undersigned respectfully

**RECOMMENDS** that the Motion be **DENIED** in part and **GRANTED** in part.

## I.    Introduction

On January 16, 2018, *pro se* Plaintiff, an inmate in the Florida penal

system, initiated this action by filing a Civil Rights Complaint pursuant to 42

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

U.S.C. § 1983, stemming from his August 3, 2016 arrest by Jacksonville Sheriff's Office patrol officers, Arthur L. Prater, III ("Prater") and Dale D. Cullen ("Cullen").[1] (Doc. 1 at 3-5.)  On February 20, 2018, after identifying deficiencies in the Complaint, the Court directed Plaintiff to file an Amended Complaint or possibly face a dismissal of his case.  (Doc. 6 at 7.)  Plaintiff filed an Amended Complaint on March 6, 2018 (Doc. 7), but on March 8, 2018 he filed a document (Doc. 8) which the Court construed as a motion for leave to file a Second Amended Complaint ("SAC").  (*See* Doc. 9).  On March 13, 2018, the Court granted Plaintiff's request and directed the Clerk to file Plaintiff's proposed SAC as a separate document on the Court docket.[2]  (*See id.*; *see also* Doc.10 (SAC).)  In his SAC, Plaintiff only names Officers Cullen and Prater as defendants.  (Doc. 10.)  On August 2, 2018, Defendants were served with the SAC.  (Docs. 13 & 14.)  On September 25, 2018, Defendants filed the present Motion, seeking dismissal of Plaintiff's SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 15.)  Plaintiff responded to the Motion on October 17 and

---

[1] Initially, Plaintiff named as Defendants the City of Jacksonville, Jacksonville Mayor Lenny Curry, Mike Williams, Sheriff of Jacksonville Sherriff's Office, Officers Cullen and Prater, as well as Mike Bruno, Duval Detention Facility Jail Administrator. (Doc. 1 at 3-5.)

[2] Plaintiff has attempted to file a third amended complaint, but his request(s) will be addressed in a separate order.  (*See* Docs. 27, 28, 31, 34, 41.)

November 19, 2018.[3]  (Docs. 17 & 18 ("Response").)  On May 20, 2019, the

Motion was referred to the undersigned for a report and recommendation

regarding an appropriate resolution.  (Doc. 40.)

## II.   Plaintiff's Allegations

In his SAC, drafted on a Civil Rights Complaint Form, Plaintiff alleges that

Officers Cullen and Prater violated his "Fourth, Eighth, and Fourteenth

[Amendment] rights under the Constitution of the United States" when they

"performed an illegal traffic stop with no reasonable suspicion or probable

cause[,]" "illegally searched Plaintiff's vehicle without a warrant[,]" and "falsely

arrested Plaintiff without a warrant or probable cause" causing Plaintiff's

"[u]nconstitutionally lengthy detention depriving Plaintiff of his life, liberty, and

property without due process of law."[4]  (Doc. 10 at 7, 10 ¶¶ 1-4.)  Plaintiff alleges

---

[3] Plaintiff filed his first Response to the Motion (Doc. 16) on October 10, 2018, but he then filed a second Response (Doc. 17) on October 18, 2018 without first requesting leave from the Court to withdraw, correct, or amend his first Response.  On November 19, 2018, Plaintiff filed a document indicating that he failed to include a conclusion in his second Response and asked the Court to consider the conclusion submitted therein.  (Doc. 18.)  Plaintiff also explained that he "responded a second time to clarify the [exhibits] Index[,] meeting the [d]eadline which would have ended on November 10, 2018." (*Id.* at 1-2.)  Plaintiff claims that his second Response was proper as he filed it before expiration of the Court's 45-day deadline pursuant to the Court's July 30, 2018 order.  (*Id.*)  Although Plaintiff is proceeding *pro se*, he has been notified that he must follow the Federal Rules of Civil Procedure and the Local Rules.  (*See* Doc. 6 at 4.)  Nevertheless, the undersigned will treat Plaintiff's first Response as withdrawn, and will consider Plaintiff's second Response and his conclusion in the November 19, 2018 request as timely (collectively Plaintiff's "Response").

[4] By way of background, based in part on information on the public record of which the undersigned takes judicial notice (discussed *infra*), Plaintiff was arrested on

3

that Defendants "act[ed] in their individual capacity performing their duty while under the color of state law."  (*Id.* at 10 ¶ 4)  Plaintiff brings this action under 42 U.S.C. § 1983 (*Id.* at 10 ¶ 5) and claims that Defendants' "negligent act[s] of [sic] omission has lead [sic] to [the] punishment of the Plaintiff whi[ch] is forbidden by the due process clause of the Constitution Amendment [sic]."  (*Id.* at 11 ¶ 7.)

Plaintiff alleges that on August 3, 2016 at 2:45 a.m., Defendants Cullen and Prater observed the vehicle being driven by Plaintiff and that "before even seeing it commit any allege[d] traffic infraction[,]" the Defendants ran the vehicle tag without having "reasonable suspicion or probable cause of any illegal activity."  (*Id.* at 7.)  Plaintiff avers that Officer Prater stated in his deposition that "it was just a [r]andom tag and there [was] nothing suspicious about his driving." (*Id.* at 8 ¶ 2.)  Plaintiff alleges that he was in the right lane traveling northbound on Philips Highway when Defendants claimed to have "observed Plaintiff['s]

---

August 3, 2016 after Defendants Prater and Cullen stopped and searched the vehicle he was driving, which led to the location of contraband and a firearm.  (*See* Docs. 10, 17, 17-1, 17-3, 17-4.)  Plaintiff was arrested for and charged with (1) possession of a firearm, weapon or ammunition by a convicted felon (Fla. Stat. § 790.23(1)(A)), (2) possession of more than twenty grams of cannabis while armed (Fla. Stat. § 790.01(2)), (3) carrying a concealed firearm (Fla. Stat. § 790.01(2)), (4) possession of cocaine (Fla. Stat. § 893.13(6)(A)), (5) possession of controlled substance paraphernalia (Fla. Stat. § 893.147(1)), and (6) failure to drive in a single lane (Fla. Stat. § 316.089(1)).  Plaintiff filed a motion to suppress the evidence from Defendants' search, which the State trial judge granted.  After the State's motion to reconsider was denied, the State entered a nolle prosequi on all charges and the case was dismissed.  However, at the time of his arrest, Plaintiff was on parole for a prior conviction and, although his criminal case was dismissed, his conditional release was revoked and he was transferred to the custody of the Florida Department of Corrections to serve the remainder of his original sentence. (*See* Doc. 1-1.)

vehicle cross over the left lane approximately two to three times in an estimated one minute period" and that "the distance was unknown but estimated by both officers [to be] no more than a tire wid[th] and interfering with no traffic." (*Id.* at 8 ¶¶ 3-4.) Plaintiff claims that Officer Prater "allege[d] in the Arrest and Booking Report [that] he observed suspect[']s vehicle cross over in the left lane on three separate occasions and was unaware if Plaintiff was possibly impaired or in medical [dis]tress." (*Id.* at 8 ¶ 4.) Plaintiff asserts that at his deposition Officer Prater could not recall if he saw Plaintiff cross over the left lane two or three times. (*Id.* at 8 ¶ 5.) Plaintiff claims he pulled over without any difficulty, showed no signs of impairment, and did not make any efforts to evade the Officers or to destroy evidence. (*Id.* at 8 ¶ 6.)

According to Plaintiff, Officer Prater alleged he smelled the odor of burned marijuana, although Plaintiff asserts that Defendants had no training as drug recognition experts and that no burned or consumed marijuana was ever located. (*Id.* at 12 ¶ 7.) Officer Cullen stated that when he approached the vehicle, he was not in a position where he could smell burned marijuana and he also stated that he did not see any residue on Plaintiff's shirt. (Doc. 17-1 at 9.) Plaintiff produced his license and registration to Officer Prater without difficulty and Defendants claimed they saw no signs of impairment and were not concerned for their safety. (*Id.* at 12 ¶ 8.) Moreover, Plaintiff claims that Defendants did not

5

conduct a DUI investigation and "did nothing to determine if Plaintiff was in fact impaired or in medical distress[.]"  (*Id.*)

Plaintiff also claims that while both Officers shined their flashlights into the vehicle, Officer Cullen allegedly observed a black bag containing marijuana under Plaintiff's right leg "in plain view" from the passenger side of the vehicle. (*Id.* at 12 ¶ 9; *see also* Doc. 17-1 at 3.)  Officer Cullen then instructed Officer Prater to get Plaintiff out of the vehicle, although Officer Prater had not seen any contraband.  (Doc. at ¶ 10.)  Officer Prater then removed Plaintiff from the vehicle, handcuffed and arrested him, and placed him in the back of the patrol car.  (*Id.* at 12 ¶ 11; *see also* Doc. 17-1 at 3.)  Plaintiff claims that the Officers then "searched the vehicle and found contraband" (Doc. 10 at ¶ 12), including "marijuana, six individually wrapped baggies of powder cocaine, and multiple pieces of what they suspected to be crack cocaine, . . . [a] loaded firearm, and a scale with alleged, but untested marijuana residue" (Doc. 17-1 at 3).  Plaintiff claims he made one statement in response to a question asked by Officer Cullen about the weapon, but that he did not answer any further questions and invoked his right to counsel.  (*See id.* at 13 ¶ 12; *see also* 17-1 at 3 ("Officer Cullen asked Mr. Head about the weapon.  Mr. Head made one statement about getting it from 'a dude' and then did not answer any further questions, invoking his right to counsel.").)  Thereafter, the Officers took Plaintiff to the pretrial detention facility. (*Id.* at 13 ¶ 13.)  Plaintiff claims that "[i]t was never determined to whom the car

6

was registered" and that there were "no item[s] identifying the Plaintiff in the bag within which the contraband was found." (*Id.* at 13 ¶ 14.)  The traffic citation for failure to drive in a single lane was not written until 3:55 a.m. (*Id.* at 13 ¶ 15.) Plaintiff retained private counsel who filed a motion to suppress the evidence and statements obtained during the stop, search, and arrest. (*Id.* at 14 ¶¶ 17, 19; *see also* Doc. 17-1.)  According to Plaintiff, the State trial judge granted the motion to suppress and ruled that "the stop of Plaintiff's car was illegal and that there was no probable cause for the stop and arrest." (*Id.* at 14 ¶ 19.)

Plaintiff appears to request declaratory judgment as relief—"Plaintiff respectfully pray[s] that this Court enter Judgment [g]ranting Plaintiff . . . a declaration that the acts and omissions describe[d] herein violate the Plaintiff's rights under the Constitution and laws of the United States." (Doc. 10 at 9.) Plaintiff also requests a "preliminary and permanent injunction [] ordering Defendants . . . not to retaliate towards Plaintiff in the future and [c]ease [their] illegal acts in performing illegal stop[s], search[es], and seizure[s] in violating citizens['] [c]onstitutional [r]ights. (*Id.* at 9,15 ¶ 2.)  Plaintiff also demands compensatory damages, damages for pain and suffering, emotional stress, and mental suffering. (*Id.* at 15 ¶ 4.)  Additionally, Plaintiff seeks punitive damages for Defendants' "willful and malicious conduct while on duty in the sum of $7,000,000 . . . ." (*Id.* at 15 ¶ 5.)  Plaintiff request a jury trial on all triable issues. (*Id.* at 15 ¶ 6.)

7

### III.   Standards

### A. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*  "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 680.

In evaluating the sufficiency of a complaint, a court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's

inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal citation and quotation marks omitted).  "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotation omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").  "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Nettles v. City of Leesburg–Police Dep't*, 415 F. App'x 116, 120 (11th Cir. Dec. 22, 2010) (internal citations and quotation marks omitted).  Further, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

The court must limit its consideration to the complaint and its attachments. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam); *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (stating "the court limits its consideration to the pleadings and exhibits attached thereto"); *see also* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment

under Rule 56."). "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369. In such a case, if the defendant attaches those documents to the motion to dismiss, the Court need not convert the motion to dismiss into a motion for summary judgment. *Id.*; *see also Korman v. Iglesias*, No. 18-13772, 2019 WL 2537622, *2 (11th Cir. June 20, 2019) ("Our Court has articulated an exception to Rule 12(d)'s conversion provision when considering the materials attached to a motion to dismiss that are both central to the plaintiff's claim and undisputed."). Furthermore, "a court may take judicial notice of matters of public record," including the docket and court records in an underlying state criminal case, "and consider those facts in resolving a motion to dismiss." *See Rhodes v. Robbins*, No. 3:18-cv-673-J-34JBT, 2019 WL 1160828 (M.D. Fla. Mar. 13, 2019) (citing, *inter alia*, *McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. Oct. 17, 2014) (per curiam)).

Finally, the pleadings of *pro se* litigants must be liberally construed and "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 448 U.S. 5, 9 (1980) (per curiam). However, *pro se* litigants are subject to the same law and rules of court as litigants who are represented by counsel. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Therefore, the

Court will not rewrite a *pro se* plaintiff's complaint to find a claim.  *See Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

### B. Section 1983 & Qualified Immunity

Title 42 U.S.C. § 1983 "provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted). To state a claim for relief under § 1983, a plaintiff must establish that he or she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quotation omitted).

People have the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citation omitted); *see also Reid v. Henry County, Ga.*, 568 F. App'x 745, 748 (11th Cir. June 9, 2014) ("A warrantless arrest without probable cause violates the Fourth Amendment.").  The standard for probable cause under both federal and Florida law is the same:

> [f]or probable cause to exist, ... an arrest must be objectively
> reasonable based on the totality of the circumstances. This standard
> is met when the facts and circumstances within the officer's
> knowledge, of which he or she has reasonably trustworthy
> information, would cause a prudent person to believe, under the
> circumstances shown, that the suspect has committed, is
> committing, or is about to commit an offense.

*Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citation omitted).  "The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland*, 382 F.3d at 1226 (citation omitted).

A defendant may be held liable under § 1983 "for his own personal actions ('direct liability'), or, under certain limited circumstances, for the actions of his subordinates ('supervisor[i]al liability')." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir. 2004).  A government official sued under a theory of direct liability under § 1983 may seek to have the complaint dismissed on qualified immunity grounds based on the allegations in the pleadings.  *See id.* at n.6.  The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Hence, qualified immunity protects from suit "'all but the plainly incompetent or those who

knowingly violate the law.'"  *Carr v. Tatangelo*, 338 F.3d 1253, 1255 (11th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred.'"  *Kingsland*, 382 F.3d at 1232 (quoting *Lee*, 284 F.3d at 1194).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Id.* (quotation omitted).  To do so, a plaintiff must establish two elements: (1) that the defendant violated a constitutional right and (2) that the right violated was clearly established.[5]  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  A court may consider these elements in whatever order it

---

[5] In determining whether a violated right was clearly established, the Eleventh Circuit employs two methods:

> The first method looks at the relevant case law at the time of the violation; the right is clearly established if "a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law." This method does not require that the case law be "materially similar" to the official's conduct; "officials can still be on notice that their conduct violates established law even in novel factual circumstances." But, where the law is stated in broad propositions, "a very high degree of prior factual particularity may be necessary."
> The second method looks not at case law, but at the officer's conduct, and inquires whether that conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the officer], notwithstanding the lack of fact-specific case-law." This method—termed "obvious clarity,"—is a "narrow exception" to the normal rule that only case law and specific factual scenarios can clearly establish a violation.

*Dupler v. Hunter*, No. 3:16-cv-191-J-34MCR, 2017 WL 3457032, at *6 (M.D. Fla. Aug. 11, 2017) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011)).

chooses, and if a plaintiff fails to establish either element, the defendant will be protected by qualified immunity.  *Rhodes*, 2019 WL 1160828, at *5 (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).

## IV.  Discussion

Before addressing the Motion on its merits, the undersigned notes that Plaintiff attached the following documents related to his underlying criminal case in support of his Response: (1) Plaintiff's February 15, 2017 amended motion to suppress evidence and statements as well as Plaintiff's counsel's April 19, 2017 memorandum to the State trial judge in advance of the suppression hearing (Doc. 17-1); (2) State court order denying the State's motion for a rehearing on [Plaintiff's] amended motion to suppress, lab results showing Plaintiff tested negative for drug use days before his arrest, and certified medical records from Plaintiff's detention indicating he had not consumed drugs in the previous 30 days (Doc. 17-2); (3) the transcript of Defendant Cullen's December 13, 2016 deposition (Doc. 17-3); and (4) the transcript of Defendant Prater's February 9, 2017 deposition (Doc. 17-4).

While these documents were not attached to Plaintiff's Complaint, the Motion has not been converted into a motion for summary judgment because the

attached documents are referenced in and central to his Complaint.[6]  (*See, e.g.*, Doc. 10 at 14 ¶ 19 (citing to the motion to suppress); *id.* at 7-8 ¶ 2, 8 ¶ 5, (citing to the deposition transcript of Officer Prater).)  Additionally, although a court may not go outside the pleadings when ruling on a motion to dismiss, a court may take judicial notice of documents at the motion to dismiss stage. *See* Fed. R. Evid. 201(b); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1276-79, 1280 (11th Cir. 1999).  The documents attached to Plaintiff's Response are also part of the underlying State criminal court record and, as the undersigned takes judicial notice of the docket to Plaintiff's state court criminal case (Case No. 2016-CF-006867), filed in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, these documents can be considered without converting the Motion into a motion for summary judgment.  *See McDowell Bey*, 588 F. App'x at 926.

## A. The Parties' Arguments

Defendants move to dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue that Plaintiff has alleged insufficient facts to support his claims, and that even if Plaintiff could establish such claims, Plaintiff's

---

[6] To the extent Plaintiff is proceeding *pro se*, he appears to rely heavily on the arguments and facts alleged in his motion to suppress, and the documents cited therein, including Defendants' deposition transcripts, to support his § 1983 claims.

SAC is due to be dismissed because Defendants are entitled to qualified immunity.  (Doc. 15 at 4-7.)  Defendants argue that even if Plaintiff's allegations are accepted as true, they are protected by qualified immunity because they had arguable probable cause to stop, search, and arrest Plaintiff.  (*Id.* at 5-7.)  First, with respect to the stop, Defendants argue that they had "reasonable, articulable suspicion that criminal activity [was] afoot" based on their observation of Plaintiff driving over the lane line and their uncertainty as to whether Plaintiff was impaired.  (*Id.* at 6.)  Defendants claim that any reasonable officer would have conducted an investigatory stop under those circumstances, and that they are entitled to qualified immunity because "the existence of a traffic violation can provide an officer with arguable probable cause to make an arrest, even though the offense is minor or normally punishable by monetary citation, and even if the officer has no knowledge of the violation at the time."  (*Id.* (citing *Reid*, 568 F. App'x at 748).)

Next, Defendants argue that they had probable cause to search Plaintiff's vehicle without a warrant based on their alleged detection of burned marijuana after making contact with Plaintiff.  (Doc. 15 at 6.)  Thus, Defendants argue that they are entitled to qualified immunity since "it was not 'clearly established' that searching Plaintiff's vehicle after smelling marijuana[] would be a violation of his constitutional rights."  (*Id.*)

Defendants also argue that they had arguable probable cause to arrest Plaintiff.  (*Id.* at 7.)  Defendants assert that "even arresting someone for a minor traffic violation is sufficient to establish arguable probable cause, entitling officers to qualified immunity."  (*Id.*)  Further, Defendants argue that they had probable cause to arrest Plaintiff where they observed "contraband" in plain view, that the contraband was evidence of criminal activity, and that "the additional evidence of criminal activity provides further justification for the Officer's belief [that] they had probable cause to arrest Plaintiff."  (*Id.*)  According to Defendants, "any reasonable officer would arrest a suspect in possession of evidence of criminal activity."  (*Id.*)

Plaintiff counters that Defendants are not entitled to qualified immunity. (Doc. 17 at 2.)  Plaintiff argues that Officer Prater stated during his deposition that "[t]here was nothing suspicious about his driving, and it was just a random tag."  (*Id.*)  Plaintiff asserts that "a random stop of a motorist in the absence of specific articulable facts which justify the stop by indicating a reasonable suspicion that a violation of the law has occurred is constitutional[ly] impermissible and violative of the [F]ourth and [F]ourteenth Amendment[s] of the United States Constitution."  (*Id.* at 2 (citing *Delaware v. Prouse*, 440 U.S. 648 (1979) and *Karnes v. Skrutski*, 62 F.3d 485 (3d Cir. 1995)).)  As discussed above, as part of his Response, Plaintiff also attached a copy of his State court motion to suppress, as well as exhibits to the motion to suppress including

17

medical records showing Plaintiff tested negative for drugs days before his arrest, medical records from his detention indicating he did not use drugs, as well as the deposition transcripts for Officer Prater and Officer Cullen.  In reading *pro se* Plaintiff's pleadings and papers liberally, the undersigned will consider these materials in support of his Response.

### B. Plaintiff's 1983 Claims and Defendants' Qualified Immunity

Here, Plaintiff asserts that Defendants, Officers Cullen and Prater, violated his Fourth and Fourteenth Amendment rights.[7]  Plaintiff alleges that Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when Defendants stopped his vehicle without reasonable suspicion or probable cause, performed a warrantless search of his vehicle, and "falsely arrested [him] without a warrant or probable cause."  (Doc. 10 at 7, 10.)  First, the undersigned finds that Defendants were acting within the scope of their discretionary authority when they stopped Plaintiff and Defendants' acts fell within their discretionary duties because they were working as police officers with the Jacksonville Sheriff's Office.  *See Holloman*, 370 F.3d at 1266; *see also Lee*, 284 F.3d at 1188.  Thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity.  To do so, Plaintiff must establish that (1)

---

[7] "The Fourth Amendment applies to state and local governments pursuant to the Due Process Clause of the Fourteenth Amendment."  *Towns v. Beseler*, No. 3:15-cv-140-J-34JBT, 2016 WL 5933400, at *4 n.8 (M.D. Fla. Oct. 12, 2016) (citing *Brown*, 608 F.3d at 734 n.15).

that Defendants violated a constitutional right and (2) the right violated was clearly established.[8]

### 1. The Stop[9]

"A traffic stop is a seizure within the meaning of the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  In general, a traffic stop is reasonable when a police officer has probable cause to believe a traffic violation has occurred.  *Id.*; *see also Smith v. City of Oak Hill, Fla.*, 587 F. App'x 524, 528 n.3 (11th Cir. Sept. 17, 2014) (quoting *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (per curiam)).  However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 88 (1968)).  "The Fourth Amendment requires at least a minimal level of objective justification for making the stop.  The Officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (internal citations and quotation marks omitted).  Furthermore, "[w]hen an officer asserts qualified

---

[8] "In wrongful arrest cases, the 'clearly established' prong of qualified immunity is framed as an 'arguable probable cause' inquiry." *Dupler v. Hunter*, No. 3:16-cv-191-J-34MCR, 2017 WL 3457032, at *7 (M.D. Fla. Aug. 11, 2017) (quoting *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009)).

[9] The undersigned construes Plaintiff's claim that the stop was unlawful as "Count I."

immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).  A law enforcement officer "who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity." *Id.* at 1165-66.  "In undertaking the arguable reasonable suspicion inquiry, this Court must examine the totality of the circumstances to determine whether an officer had a 'particularized and objective' basis to support his suspicion. Whether the officer's suspicion ends up being mistaken is immaterial so long as it was reasonable." *Whittier v. Kobayashi*, 581 F.3d 1304, 1309 (11th Cir. 2009) (citations omitted).

Here, Plaintiff alleges that Defendants did not have reasonable suspicion or probable cause to conduct the traffic stop in violation of his Fourth Amendment right to be free from an unlawful seizure, thereby identifying the particular constitutional right allegedly infringed.  Next, Plaintiff must show that the right violated was clearly established. Thus, the question is whether, taking Plaintiff's factual allegations as true, a reasonable officer in the same circumstances and possessing the same knowledge as Defendants could have believed that reasonable suspicion existed for initiating the traffic stop.  Here, Defendants stopped Plaintiff after purportedly observing his vehicle cross the traffic lane two or three times, in violation of Fla. Stat. § 316.089(1), which reads: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be

20

moved from such lane until the driver has first ascertained that such movement can be made with safety."  However, a driver's failure to maintain a single lane in violation of § 316.089(1) must create a danger to other traffic to justify the stop. *See Jordan v. State*, 831 So.2d 1241, 1242-43 (Fla. Dist. Ct. App. 2002) ("The applicable statute in this case recognizes it is not practicable, perhaps not even possible, for a motorist to maintain a single lane at all times and the crucial concern is safety not precision.") (quoting *Crooks v. State*, 710 So.2d 1041, 1043, (Fla. Dist. Ct. App. 1998) ("Section 316.089 is similar to section 316.155, Florida Statutes (1995), governing the use of turn signals, in that a violation cannot occur in isolation but requires evidence that the driving pattern created a reasonable safety concern.") (citation omitted)).

Plaintiff alleges that that even if he did cross the left lane two or three times by less than a tire-width, Defendants did not have reasonable suspicion to stop Plaintiff where he did not interfere with traffic.  Defendants, on the other hand, argue that they are entitled to qualified immunity because they had reasonable suspicion that Plaintiff was driving while impaired or in distress.  However, in reading Plaintiff's allegations liberally, Defendants' purported claim that before stopping Plaintiff there was nothing suspicious about his driving, coupled with their failure to conduct a field sobriety test or to inquire whether Plaintiff was in medical distress, raises an inference that Defendants did not have a legitimate concern that Plaintiff was driving while under the influence or in distress.  *See*

*Beahan v. State*, 41 So.3d 1000, 1002 (Fla. Dist. Ct. App. 2010) ("To make a lawful traffic stop for driving under the influence of drugs or alcohol, an officer must have a reasonable suspicion that the driver is impaired."); *see also Dep't of Highway Safety & Motor Vehicles v. DeShong,* 603 So.2d 1349, 1352 (Fla. Dist. Ct. App. 1992) (recognizing that "a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior").  Therefore, Plaintiff has established that his right to be free from an unlawful stop was clearly established and, taking Plaintiff's allegations as true, Defendants did not have arguable reasonable suspicion or probable cause to conduct the stop.

Moreover, Defendants' argument that the facts in *Reid v. Henry Cty. Ga.* are analogous to this case and support a finding of qualified immunity is unpersuasive.  In *Reid* the court found that the arresting officer had arguable probable cause to stop and arrest a motorist for changing lanes and making a turn without using a turn signal and noted that "[t]he existence of a traffic violation can provide an officer with arguable probable cause to make an arrest, even though the offense is minor or normally punishable by monetary citation, and even if the officer had no knowledge of the violation at the time."  *Reid*, 658 F. App'x at 748.  Here, it can be inferred that Plaintiff argues that there was no traffic violation that could have justified the traffic stop and that no reasonable

officer could have suspected he was driving while under the influence or in distress.[10]  *See Llorente v. Demings*, 743 F. App'x 327, 329 (11th Cir. 2018) (holding that the district court improperly granted the officer's motion for summary judgment on the plaintiff's § 1983 false arrest claim and finding that the officer was not entitled to qualified immunity at the summary judgment stage where, "taking the facts in the light most favorable to [the plaintiff], no reasonable officer could have believed that [plaintiff's] conduct at the time of the stop constituted driving under the influence").[11]  As such, Defendants are not entitled to qualified immunity as to Count I.

---

[10] Defendants reliance on *Smallwood v. Ainsworth*, 542 F. App'x 807 (11th Cir. 2013), is also unpersuasive where the facts in that case are distinguishable and involved a review of the lower court's decision on summary judgment.  In *Smallwood*, the officer was found to have probable cause to stop and arrest the driver on suspicion of driving under the influence where the officer observed the driver swerve and sway in her lane, almost hit the curb and touch the divider lines, where the officer smelled alcohol upon making contact with the driver and observed the driver's eyes were bloodshot, and where the driver failed a sobriety test.  *Id.* at 808-10.

[11] In *Llorente*, the Eleventh Circuit also found that the plaintiff's driving maneuvers, characterized by the district court as "irregular or out of the ordinary," did not give rise to arguable reasonable suspicion to detain the plaintiff or arguable probable cause to arrest him under Fla. Stat. §§ 316.074 or 316.151 where his lane changes and left turn did not violate the statutes.  *Id.* at 328-29; *see also Llorente v. Elias Gallup*, No. 6:15-cv-1844-Orl-22TBS, 2017 WL 6345935, at *9 (M.D. Fla. Sept. 5, 2017), *af"d in part, rev'd in part and remanded sub nom. Llorente v. Demings*, 743 F. App'x 327 (11th Cir. 2018).

### 2. The Search[12]

"The Fourth Amendment generally requires police to secure a warrant before conducting a search."  *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). However, the automobile exception to the warrant requirement permits "officers to search any item or compartment in the car that might contain the object of the search without a warrant, as long as they have probable cause to believe that it holds evidence of a crime."  *Smith v. City of Oak Hill*, No. 6:11-cv-1332-Orl-31KRS, 2013 WL 140232, *6 (M.D. Fla. Jan. 11, 2013) (citing *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir. 1990).  Here, Defendants argue that they had probable cause to search Plaintiff's vehicle based on their detection of the smell of burned marijuana.  In his SAC, Plaintiff claims that Officer Prater alleged to have smelled burned marijuana when he made contact with Plaintiff, but appears to challenge that Defendants could have smelled burned marijuana. (*See* Doc. 10 at 12 ¶ 7; *see also* Doc. 17-1 at 22 ("Likewise, Officer Prater and Officer Cullen alleged they observed the burned smell of marijuana emitting from the vehicle in the Arrest and Booking Report.  However, Officer Cullen stated in his deposition that when he approached the vehicle he was not in a position to smell marijuana. . . . The officers also misidentified what they believed to be crack cocaine. . . . Officer Prater and Cullen never recovered burned marijuana,

---

[12] The undersigned construes Plaintiff's claim that the search was unlawful as "Count II."

24

not a blunt.  Neither officer was a Drug Recognition Expert and no contraband was located on Mr. Head's person.").)  Nevertheless, "[u]nder Florida law a police officer smelling marijuana coming from a car window 'unquestionably' has probable cause to search the passenger compartment of that vehicle."  *Smith*, 2013 WL 140232, at *6 n.9 (citing *State v. Betz*, 815 So. 2d 627, 633 (Fla. 2002).)  Here, if Defendant Prater reasonably but mistakenly believed he detected the smell of burned marijuana, then a reasonable officer under the circumstances could have believed there was probable cause to conduct the search.  *See Skop v. City of Atlanta, Ga*., 485 F.3d 1130, 1137 (11th Cir. 2007) ("[L]aw enforcement officers may make reasonable but mistaken judgments regarding probable cause[,] but [qualified immunity] does not shield officers who *unreasonably* conclude that probable cause exists.")  (emphasis in the original).  However, Plaintiff appears to argue that Defendants could not have smelled burned marijuana at all, and not that they were simply mistaken.  *See Llorente*, 743 F. App'x at 329 (noting that "when there are multiple reasonable determinations of the facts, the existence of probable cause in a § 1983 action presents a jury question").  In reading *pro se* Plaintiff's allegations liberally, it appears that Plaintiff raises issues of fact; therefore, the undersigned finds that Defendants' arguments as to Count II are better suited for summary judgment.

### 3. *The Arrest*[13]

"A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland*, 382 F.3d at 1226. "An arrest is supported by probable cause when it is objectively reasonable based on the totality of the circumstances." *Henry v. City of Mt. Dora*, No. 5:13-cv-528-Oc-30PRL, 2014 WL 5823229, at *11 (M.D. Fla. Nov. 10, 2014), *aff'd*, 688 F. App'x 842 (11th Cir. May 31, 2017). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). Consequently, "innocent behavior will frequently provide the basis for a showing of probable cause." *Id.* "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

However, "[t]o determine whether a law enforcement officer is entitled to qualified immunity with respect to an alleged wrongful arrest, a lack of arguable probable cause rather than actual probable cause is the standard." *Reid*, 568 F. App'x at 748 (citation omitted). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Rhodes*, 2019 WL 1160828 at *6 (quoting *Lee*, 284 F.3d at 1195)

---

[13] The undersigned construes Plaintiff's claim that the arrest was unlawful as "Count III."

(alterations and quotation marks omitted).  "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause[,] but does not shield officers who *unreasonably* conclude that probable cause exists."  *Skop v. City of Atlanta, Ga*., 485 F.3d 1130, 1137 (11th Cir. 2007) (emphasis in the original).  This is an objective standard that does not call for "'an inquiry into the officer's subjective intent or beliefs,' which are irrelevant."  *Rhodes*, 2019 WL 1160828 at *6 (alterations omitted) (quoting *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (per curiam)).  "The proper focus is on 'whether the arresting officer violated clearly established law in making the arrest based on the objective factors that gave rise to his probable-cause determination and not whether the arrestees' actions actually constituted a crime.'"  *Id.* (quoting *Rushing*, 599 F.3d at 1303 n.8).  "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later."  *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) (collecting cases).  "Whether the arresting officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the facts of the case."  *Reid*, 568 F. App'x at 748 (citation omitted).

In *Smith v. City of Oak Hill, Fla.*, under a similar factual scenario as this case, the District Court noted:

> There are three points on the night in question when the officers were required to have more than inchoate suspicion to act as they did: When Smith's vehicle was stopped, when Smith's vehicle was searched, and when Smith was arrested. *Although Smith attempts to argue to the contrary, it cannot seriously be disputed that a police officer who finds a private citizen travelling alone in a vehicle with a duffel bag full of contraband in the front seat has probable cause to make an arrest for possession—at least in the absence of special circumstances or a compelling explanation, neither of which are present here.* Thus, the Court must consider whether probable cause existed in regard to the initial stop and whether probable cause existed to search Smith's vehicle.

2013 WL 140232, *5 (emphasis added) (footnote omitted).  In *Smith*, the court rejected the plaintiff's argument that the officers' discovery of a duffle bag with contraband in plaintiff's vehicle was not sufficient to create the presumption that he was in constructive possession of the contraband to justify his arrest. The court noted that "whether the arresting officer had probable cause to believe that the defendant was in possession of contraband and was therefore subject to arrest" involves a different inquiry from whether the prosecution proved constructive possession at trial.  *Id.* at n.5 (citing *Links v. State*, 927 So.2d 241, 243 (Fla. Dist. Ct. App. 2006) (reversing a defendant's conviction where the defendant alleged he had no knowledge of the presence of contraband)).

Here, Plaintiff alleges that Defendants could not have smelled burned marijuana and that they could not have seen the black bag,[14] later found to

---

[14] Plaintiff alleges that Defendants did not have probable cause to search his vehicle because the black bag was not in plain view and Officer Cullen could not have seen the contents of the bag before searching the vehicle; rather, it can be inferred that

contain contraband, when they placed him under arrest and before they

searched the vehicle.  Even if Plaintiff argues that the contraband located in the

vehicle was fruit of the poisonous tree, and thus should not be considered, the

Eleventh Circuit has held that "the exclusionary rule does not apply in a civil suit

against police officers."  *Black v. Wigington*, 811 F.3d 1259, 1298 (11th Cir.

2016) (finding that the defendant police officers could rely on evidence found

during an illegal search to prove that the arrest warrants at issue were supported

by probable cause).  A reasonable officer under these circumstances could have

believed probable cause was present to arrest Plaintiff for possession.  *See Reid*,

568 F. App'x at 749 ("As long as probable cause existed to arrest the suspect for

any offense, the arrest and detention are valid even if probable cause was

lacking as to some offenses, or even all announced charges.").  Thus, because

Defendants had arguable probable cause to arrest Plaintiff after locating the

weapon and contraband in the black bag, they are entitled to qualified immunity

with respect to Plaintiff's false arrest claim.

## V.    Conclusion

Taking the allegations in the Complaint and the documents attached to the

Response as true, and not making a determination of the merits of the case, the

---

Plaintiff alleges that Officer Cullen fabricated his purported observation of marijuana
protruding from the black bag.  (*See* Doc. 17-1 at 9 ("To suggest that Officer Cullen
could see inside a bag that was allegedly behind and under Mr. Head's fe[e]t on the
floorboard at night and that he could see that said items were contraband, in the dark, is
without credulity.").)

undersigned finds that Plaintiff has made sufficient factual allegations to support his § 1983 claims against Defendants with respect to Counts I and II.  Moreover, taking Plaintiff's allegations as true as to Counts I and II, Plaintiff has established that Defendants are not entitled to qualified immunity.[15]  However, Defendants are entitled to qualified immunity as to Count III.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 15**) be **DENIED** as to Counts I and II and **GRANTED**  to the extent the Second Amended Complaint be **DISMISSED with prejudice** as to Count III**.**

**DONE AND ENTERED** in Jacksonville, Florida, on August 15, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro se* Plaintiff

---

[15] The undersigned also notes that Defendants would not be precluded from reasserting their "qualified immunity defense later in this action as the facts of the case become more developed."  *See Rhodes*, 2019 WL 1160828, *16 n.11 (citing *Oladeine v. City of Birmingham*, 230 F.3d 1275, 1285 (11th Cir. 2000)).