UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DERIEL HEAD,

        Plaintiff,

v.                                        Case No. 3:18-cv-108-J-34MCR

OFFICER DALE D. CULLEN
AND AUTHOR L. PRATER, III,[1]

        Defendants.

**ORDER**

**I. Status**

Deriel Head, an inmate of the Florida penal system, initiated this action on January 16, 2018, by filing a pro se Civil Rights Complaint (Doc. 1). He filed an Amended Complaint (Doc. 7) on March 6, 2018, and a Second Amended Complaint (SAC; Doc. 10) on March 13, 2018.[2] In the SAC, Head names the following Defendants: (1) Dale D. Cullen, an officer of the Jacksonville Sheriff's Office (JSO), and (2) Author L. Prater, III, a JSO officer. He asserts that the Defendants violated his federal constitutional rights when they

---

[1] The Clerk shall change the docket to reflect the correct spelling of Defendant's surname as "Cullen." See Motion to Dismiss (Doc. 15) at 1.

[2] Head filed requests for leave to amend his complaint, see Docs. 31, 34, 41, which the Magistrate Judge denied on August 23, 2019, see Amended Order (Doc. 53). Thus, the SAC is the operative complaint.

unlawfully stopped the vehicle he was driving, falsely arrested him, and illegally searched the vehicle on the morning of August 3, 2016. As relief, he seeks compensatory and punitive damages as well as declaratory and injunctive relief.

Defendants filed a Motion to Dismiss (Motion; Doc. 15). The Court advised Head that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Order (Doc. 12). Plaintiff filed a response in opposition to the Motion. See Response to Defendants' Motion to Dismiss (Response; Doc. 17); Reconsider Plaintiff's Conclusion to Plaintiff's Response to Defendants' Motion to Dismiss (Supplemental Response; Doc. 18).[3] Head attaches the following documents to his Response: State of Florida v. Deriel Head, case number 2016-CF-006867, Head's Amended Motion to Suppress Evidence and Statements (Doc. 17-1), May 11, 2017 Order Denying the State's Motion for Rehearing on Head's Amended Motion to Suppress Evidence and Statements (Doc. 17-2 at 2), Head's medical records (Docs. 17-2 at 3-20), and Cullen and Prater's Depositions (Docs. 17-3, 17-4).

---

[3] In his Supplemental Response (Doc. 18), Head asks that the Court "consider this conclusion" as part of his October 16, 2018 Response (Doc. 17). See Supplemental Response at 2. Thus, the Court treats Head's initially-filed Response to Defendants' Motion to Dismiss (Doc. 16) as withdrawn, and considers Head's Response and Supplemental Response.

2

The Honorable Monte C. Richardson, United States Magistrate Judge, entered a Report and Recommendation (Report; Doc. 50) on August 15, 2019. In the Report, the Magistrate Judge recommends that Defendants' Motion be denied as to Counts I and II, and granted to the extent that the SAC be dismissed with prejudice as to Count III.[4] See Report at 30.

Specifically, the Magistrate Judge recommends that the Court conclude that the Defendants are not entitled to qualified immunity as to Head's claims relating to the alleged unlawful stop (Count I). See id. at 23. Next, the Magistrate Judge recommends that the Court find that Defendants' arguments relating to Head's claims concerning the asserted illegal search (Count II) "are better suited for summary judgment." Id. at 25. Last, the Magistrate Judge recommends that the Court conclude that the Defendants are entitled to qualified immunity as to Head's claims that the Defendants falsely arrested (Count III) him "because Defendants had arguable probable cause to arrest [Head] after locating the weapon and contraband in the black bag . . . ." Id. at 29. On August 27, 2019, Head filed objections to the Report. See Plaintiff's Motion to Object to the Magistrate's Report and Recommendation (Objections; Doc. 55). In the Objections, Head urges the Court to reject the Magistrate Judge's findings and recommendation as to Count III. See

---

[4] The Magistrate Judge construes Head's claims as Counts I (unlawful stop), II (illegal search), and III (false arrest). See Report at 19 n.9; 24 n.12; 26 n.13.

3

Objections at 3-7. He asserts that the Defendants are not entitled to qualified immunity as to his false arrest claims against them. See id. at 7.

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge." 28 U.S.C. § 636(b)(1). If no specific objections to findings of facts are filed, the district court is not required to conduct a de novo review of those findings. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see also 28 U.S.C. § 636(b)(1). However, the district court must review legal conclusions de novo. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994) (per curiam).

## II. Plaintiff's Assertions[5]

As to the underlying facts of his claims, Head asserts that Defendants Cullen and Prater "randomly check[ed]" the vehicle's license tag when he had not committed a traffic infraction. SAC at 7. According to Head, Defendants maintained that they saw Head's vehicle cross over to another lane two or three times in a one-

---

[5] In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

4

minute period.[6] See id. at 8. Head states that he "pulled over" without any "difficulty" or "impairment." Id. He avers that he neither evaded the officers nor destroyed any evidence. See id. He also asserts that he gave Prater his license and registration without any "difficulty," and neither officer tried to determine if he was impaired or medically distressed. Id. at 12. According to Head, Prater claimed that he "smelled a burnt odor of marijuana," and Cullen said that he saw "in plain view" a black bag under Head's leg. Id. Prater then removed Head from the vehicle based on Cullen's verbal directive. See id. Head asserts that Prater handcuffed and arrested him, and then placed him in a locked patrol car while the two officers searched his vehicle. See id. at 12-13.

Head states that Cullen and Prater found contraband during the search. See id. at 13. He avers that he answered one of Cullen's questions, and then invoked his right to counsel. See id. The officers later transported him to the pretrial detention facility. See id. According to Head, law enforcement officers "never determined to whom the car was registered," and there were not any items in the black bag (where they found the contraband) that identified Head. Id. He complains that the citation for his alleged failure to drive in a single lane was not written until

---

[6] In the SAC, Head refers to Defendants' deposition testimony in his state-court criminal case. See SAC at 7-8, 12. Nevertheless, the Court predominantly focuses on Head's asserted facts based on his knowledge or observation of how the events transpired that morning.

5

approximately an hour later. See id. According to Head, the state-court trial judge set an excessive bond that same day, and he retained private counsel a few weeks later. See id. Ultimately, Head maintains that the trial judge granted his motion to suppress the evidence. See id. at 14.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x

837, 839 (11th Cir. 2011)[7] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

A court considering a motion to dismiss under Rule 12(b), Federal Rules of Civil Procedure (Rule(s)), is generally limited to the facts contained in the operative complaint and any attached exhibits, including documents referred to in the complaint that are central to the plaintiff's claims. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009). Nevertheless, when reviewing a motion to dismiss under Rule 12(b)(6), "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002)); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citation omitted).

---

[7] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

## IV. Judicial Notice

At any stage of the proceeding, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The United States Court of Appeals for the Eleventh Circuit has cautioned that judicial notice should be employed sparingly because it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997). "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Id.

Recently, in a habeas corpus case in which the district court addressed the issue of timeliness, the Eleventh Circuit held that the dates that the district court noticed from the online state-court dockets constituted "judicially noticed facts under Rule 201." Paez v. Sec'y, Fla. Dep't of Corr., 931 F.3d 1304, 1307 (11th Cir. 2019). Moreover, the Eleventh Circuit has determined that a court may take judicial notice of public records when ruling on a motion to dismiss. See Lozman v. City of Riviera Beach, Fla., 713

F.3d 1066, 1077 at n.9 (11th Cir. 2013) (taking judicial notice of state court documents for purposes of a Rule 12(b)(6) motion to dismiss in a § 1983 case). Generally, the Eleventh Circuit has distinguished between taking judicial notice of the fact that court records or court rulings exist and taking judicial notice of the truth of the matters stated within those court records or court filings. See Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1225 (11th Cir. 2017). Thus, judicial notice of related court cases can only be taken either to recognize the judicial act that the order represents or the subject matter of the litigation. See Thomas v. Sec'y, Fla. Dep't of Corr., 644 F. App'x 887, 888 (11th Cir. 2016) (per curiam) (taking "judicial notice of another court's order for the limited purpose of recognizing the 'judicial act'" that the order represented) (citation omitted); McDowell Bey v. Vega, 588 F. App'x 923, 926-27 (11th Cir. 2014) (per curiam) (finding that district court properly took judicial notice of entries appearing on state court's docket sheet).

## V. Summary of Arguments

In the Motion, Defendants assert that they are entitled to qualified immunity. See Motion at 4-7. In the Response, Head maintains that he has sufficiently stated federal constitutional claims against the Defendants, and that they are not entitled to qualified immunity. See Response; Supplemental Response. To the extent Head requests that the Court consider specific documents

10

from his state-court criminal case (State of Florida v. Deriel Head, case number 2016-CF-006867), see Docs. 17-1 through 17-4, the Court takes judicial notice of the fact(s) of such litigation and its docket entries. Insofar as Head refers to Cullen and Prater's deposition testimony in case number 2016-CF-006867, the Court declines to consider these documents which are outside of the pleadings at the motion-to-dismiss stage of the litigation. Because in his arguments to the Magistrate Judge Head relied significantly on these and other matters that are beyond the pleadings and which the Court declines to consider, the Court will address the parties' arguments anew.[8]

## VI. Discussion

### A. Traffic Stop

Head asserts that Defendants Cullen and Prater "performed an illegal traffic stop with no reasonable suspicion or probable cause." SAC at 10. Defendants maintain that they had arguable probable cause for the traffic stop. See Motion at 5-6. They state that "it was not unreasonable for [them] to have conducted an investigatory stop, when they were unsure if [Head] was driving impaired at 2:45 a.m." Id. at 6. In his Response, Head urges the Court to deny the Motion, stating that the officers lacked a reasonable suspicion to stop his vehicle. See Response at 2.

---

[8] The Clerk of the Court is directed to terminate the Report.

Recently, the Eleventh Circuit stated:

> "[L]aw enforcement officers may seize a suspect for a brief, investigatory Terry stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting Terry, 392 U.S. at 19-20, 88 S. Ct. at 1878-79).[9] The reasonable suspicion standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 120 S. Ct. 673, 676, 145 L.Ed.2d 570 (2000)). Nonetheless, "the Fourth Amendment requires at least a minimal level of objective justification for making [a] stop." Id. (quoting Wardlow, 528 U.S. at 123, 120 S. Ct. at 676). We consider the totality of the circumstances when determining whether reasonable suspicion existed and note that "[d]efensive behavior toward police is a relevant factor in this inquiry." Id. at 1186-87. When an officer asserts the defense of qualified immunity to a claim of an unconstitutional investigatory stop, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000). Thus, the relevant inquiry is whether the officers' seizure of [the suspect . . . ] was supported by "arguable reasonable suspicion." Id.

Davis v. Edwards, No. 18-11695, 2019 WL 3814435, at *3 (11th Cir. Aug. 14, 2019) (per curiam). According to Head, he did not commit a traffic infraction that could have justified the stop, and no

---

[9] Terry v. Ohio, 392 U.S. 1 (1968).

reasonable officer could have suspected that he was driving while impaired or medically distressed. See SAC at 7-8. Taking Head's allegations in the SAC as true, as the Court must, he provides sufficient facts to state a Fourth Amendment claim for an unlawful traffic stop against Defendants Cullen and Prater. Thus, Defendants' Motion is due to be denied as to Head's Fourth Amendment claim relating to the alleged illegal traffic stop.

## B. Arrest

Head also asserts that Prater alleged he "smelled a burnt odor of marijuana," and Cullen alleged that he saw a black bag under Head's leg. SAC at 12. Defendants maintain that they had arguable probable cause to arrest Head. See Motion at 7. They state that they "were considering more than [Head]'s traffic violations when they arrested him, and "[a]ny reasonable officer would arrest a suspect in possession of evidence of criminal activity." Id. The Eleventh Circuit has stated:

> An arrest made without arguable probable cause violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures. Skop v. City of Atlanta, 485 F.3d 1130, 1143 (11th Cir. 2007). "A detention on the basis of a false arrest presents a viable section 1983 action" for false imprisonment. Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Brown v. City of Huntsville, 608

13

> F.3d 724, 734 (11th Cir. 2010). An officer need not have actual probable cause to receive qualified immunity, but may merely have arguable probable cause. Id. Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." Id. (quotation marks omitted).

Hails v. Dennis, No. 18-15030, 2019 WL 3283279, at *2 (11th Cir. July 22, 2019) (per curiam). According to Head, Prater could not have smelled "a burnt odor of marijuana" when he had no training as a drug recognition expert, and no "burnt or consumed marijuana" was ever found. SAC at 12. Additionally, liberally construing Head's assertions, he questions Cullen's ability to see the black bag because Cullen and Prater were using flashlights to illuminate the inside of the vehicle since the stop occurred in the early-morning hours before daylight. See id. Thus, according to Head, the officers could not have smelled burnt marijuana or seen contraband in the vehicle, and as a result did not have even arguable probable cause to arrest him. Taking Head's allegations in the SAC as true, as the Court must, he provides sufficient facts to state a Fourth Amendment false arrest claim against Defendants Cullen and Prater. Therefore, Defendants' Motion is due to be denied as to Head's Fourth Amendment false arrest claim against the Defendants.

### C. Post-Arrest Vehicle Search

Head asserts that Defendants Cullen and Prater unlawfully searched the vehicle after they arrested and detained him. See SAC at 13. Defendants maintain that they had probable cause to search the vehicle because of the burnt marijuana smell. See Motion at 7. "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle. Probable cause may arise when an officer, through training or experience, detects the smell of marijuana." United States v. Smith, 596 F. App'x 804, 807 (11th Cir. 2015) (per curiam) (citations omitted). Notably, in the SAC, Head states that Prater would not have been able to smell marijuana emitting from the vehicle interior. See SAC at 12. Taking Head's allegations in the SAC as true, as the Court must at this motion-to-dismiss stage of the litigation, Head provides sufficient facts to state a Fourth Amendment claim against Defendants Cullen and Prater. Thus, Defendants' Motion is due to be denied as to Head's Fourth Amendment illegal-search claim against the Defendants.

In light of the foregoing, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 15) is **DENIED**.

2. Defendants, no later than **October 21, 2019**, must answer or otherwise respond to the SAC.

3. The parties shall conduct discovery so the due date of any discovery requested is no later than **February 21, 2020.** Any motions relating to discovery shall be filed by **March 4, 2020.**

4. All motions to dismiss and/or for summary judgment shall be filed by **April 6, 2020.**[10] This deadline is also applicable to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

5. Responses to any motions to dismiss and/or for summary judgment shall be filed by **April 30, 2020.**

6. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately, and want a Magistrate Judge to conduct a settlement conference, they should notify the Court.

7. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendants' counsel. Defendants' counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

---

[10] Any DVDs submitted as exhibits to a summary judgment motion should not contain a sticker-type label. Such labels inhibit the Court's ability to view the video footage. The case number and other relevant information should be written with a black marker on the DVD itself. Additionally, the Court requires the complete transcript of any deposition submitted as an exhibit.

8. The Court expects strict compliance with the Court's deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of September, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 9/16
c:
Deriel Head, FDOC #302012
Counsel of Record